Morning. May it please the Court. My name is Kevin Russell. I represent the Insurance Commissioner in this case, and I'm afraid this case only. I don't know much about the case that was just argued. You wouldn't want me to ask you a question about that case? I'd rather not, but I'm sure that if the Court asked the Commissioner his views on that case, he'd be happy to provide them. I'm here today with Ms. Cindy Oliver, who represents NOLGA. With the Court's permission, Ms. Oliver will address the issues related to what the briefs refer to as the NOLGA premise, and I will address the balance of the issues in the Appeal and the Cross-Appeal. If we'd like to try to reserve two minutes for rebuttal, please. Yes, sir. The defendant in this case participated in one of the largest financial frauds ever perpetrated against the government of the State of California. And because it agreed to help the co-conspirators cover up that fraud by repeatedly lying to the Insurance Commissioner, it was rewarded with the opportunity to acquire much of the assets that its co-conspirators obtained as a result of that fraud. And as a consequence, Artemis is today hundreds of millions of dollars richer than it would have been if it had followed the law. The jury's punitive damage award in this case did nothing more than to take those profits and disgorge them. And there's nothing in California law or the U.S. Constitution that justified the District Court's subsequent order vacating that award in its entirety. What's the best California case that supports, that you would cite to us as supporting the basis for the punitive damages award, where the jury returned a verdict of zero compensatory damages? Well, I think there are several. There is Ward v. Taggart, which is the case in which the California Supreme Court upheld the punitive damages award on the basis of solely of a restitution award that was issued by the California court. Well, my question, though, was where the jury returned a verdict of zero compensatory damages? There are several. There's Gagnon, which is a case in which the jury said zero, but it was apparent from the evidence in that case that there had been harm sufficient to establish liability. Wasn't Gagnon the one where there was a state representative, the wife? There was, but the court was also clear that there was... But there had been damages, a certain amount of damages had been found in that case. She just couldn't recover because she was representing the estate. But the same is clear here. I mean, contrary to the cases Artemis relies upon here... Well, there's a legal reason there why damages couldn't be awarded. And there's perhaps a legal reason here as well. Well, no, here the jury presented your case for compensatory damages to the extent they were allowed to the jury, and the jury returned zero damages. Zero damages, but it had previously found that there was harm sufficient to establish liability. What was the value of that harm? They said that there was no pecuniary harm, but that doesn't... So how do you have a basis for punitive damages under California law? Under California law, for several reasons. Even Artemis is absolutely clear that under Kaiser, an award of nominal damages is a sufficient... Was there an award of nominal damages here? There wasn't, but that was... Was there even $1 of compensatory damages here? There wasn't, but it was clearly unlawful. The court specifically instructed them on nominal damages, didn't it? It did, and there's no question that we're legally entitled to it. Under this court's precedent, under California law precedent... But you're not asking for us to award you nominal damages, are you? But we don't need to. The court cases are clear that the purpose of a nominal damages award isn't just some arbitrary rule, but it serves the purpose of establishing that the plaintiff has suffered a harm sufficient to establish liability. All you need for a punitive damages... Or for an award of nominal damages is proof that there's been a violation of your right. And the jury found that here. The jury found that there was harm sufficient to establish liability. It was specifically asked to make that finding in the jury verdict form on conspiracy. It was instructed in the conspiracy instructions that they had to find harm, and they did find harm. Artemis never objected to those jury's instructions as being inadequate to establish liability. And they never objected to the sufficiency of that evidence. And so it's far too late for them to come to this court now and say we didn't establish a complete verdict of liability. And having established the predicate for a complete verdict of liability, we're entitled under California law to an award of nominal damages, and it's undisputed that that is an adequate predicate for punitive damages in this case. Did you ask for... I don't remember in your brief, but did you ask in your brief here that there should be a reversal because the jury didn't award nominal damages? We don't need to because we're not appealing. I mean, all we're appealing is the vacation of a punitive damages award. And in the California Supreme Court, there's certain cases like Clark v. McClung, that a jury's failure to award damages when harm is actually established, sufficient to establish liability, is simply an error in form, not in substance. And here, this is a case very much like, for example, if the state of California had a contracting program with a veteran's preference. So, you know, as I understand what happened here, the trial judge vacated... not vacated, but did, you know, bifurcated proceedings. There was the liability phase, the damage phase, which I guess encompassed the punitive damage phase as well. At the end of the liability phase, at the end of the first phase of the trial, the court determined that there was a basis to move forward for damages. There was, in fact, a complete verdict of liability. Right. So you established liability, but you still had to establish the amount of compensatory damages that you were entitled to. Put aside the NOGA premise for a moment. He allowed you to go forward to argue whatever else you could argue for a basis for awarding compensatory damages. Presented your evidence. Jury said zero. If this court interpreted... Zero. Even if this court interpreted that to indicate that there was absolutely no pecuniary harm, it is clear under California law and the U.S. Constitution that a jury is entitled where that fraud is enormously profitable, but it causes no economic harm. It is permissible for the jury to take away those profits through punitive damage awards, lest the defendant not be deterred from engaging in that conduct. What U.S. Supreme Court says that? The Supreme Court has been clear. It hasn't addressed a case like this. So the Supreme Court has been clear that the purpose of the Due Process Clause is to prevent arbitrary deprivations of property that don't serve a legitimate state interest in deterrence. And here... But the real question is going to be one under California law, isn't it? And all you're saying is that your argument is that the Due Process Clause wouldn't prohibit such an award. That's right. You can't compel it. That's right.  Punitives can only attach where there has been some kind of compensatory award. And here again, at the very least, there was a restitution award. Was the jury told about the restitution award? It wasn't asked. And in fact, Artemis never asked the district court to instruct the jury that it could not enter an award of punitive damages without an award of compensatory damages. And for that reason, it is... But the jury had no idea that there was a restitutionary award later on. No, but it doesn't matter. They had no idea in Ward v. Taggart where the restitution order was issued by the state Supreme Court in the first instance. Again, the purpose of this rule is simply to make sure that punitive damages are used as a remedy for an established tort as opposed to a freestanding mechanism of cause of action for punishing bad conduct. And so long as there is sufficient harm to establish liability, which was established in this case, you're entitled to an award of nominal damages. You're entitled in an inappropriate case as here to an award of restitution. And in those circumstances, the state Supreme Court has said, you know, even if it's $1 of compensatory damages, that's not really the point. It's not the amount. It's the fact that that signifies that this is really a case in which there's been a true violation of state law that's a serious thing that a jury could at the very least here think ought not to be profitable. Because make no mistake, if the answer in this case is that Artemis is allowed to keep hundreds of millions of dollars that it wouldn't have earned but for its fraud, the lesson here is going to be that fraud on the government can pay. In addition, I think, you know, Artemis cites these cases in which there was a zero compensatory award. But I think it's important to recognize that what those cases were about are cases in which the court construed that zero award to indicate that there had been a failure to establish liability. Because those weren't cases in which we had a bifurcated trial. They weren't cases in which we had a specific interrogatory to the jury to ask was harm established. And in this case, there was. And so there's no question that the zero compensatory award might indicate that the jury found that there was, in fact, no fraud. As I started to say, this case is much like one in which the government had a veteran's preference in a contracting program. Somebody lied about their veteran's status, got the contract, did a fine job, so there's no pecuniary damages. But nobody would argue that there had been no fraud. And nobody, I would think, would argue that the government is disentitled from making that fraud unprofitable. And that's all that's happened in this case, even if this court assumes, which I think is incorrect in light of an older premise that will be discussed in a moment, even if this court assumes that there was no pecuniary harm in this case. You almost used half your time. Do you want to? Yeah, let me turn this over to Ms. Oliver and reserve the rest for rebuttal, please. Okay. Good morning. Cindy Oliver on behalf of NOLGA. Between my cold and my nerves, I'll try not to squeak too much, and I apologize if I do. There must be a remand for retrial in this case, because the commissioner improperly deprived the commissioner of his primary damages model by taking and substituting his judgment for that of the jury. Were you involved in the trial? I was, Your Honor. Okay. I need a little background information so I better understand the context in which all this happened. Did the plaintiffs ask for verdict form number 7? They did, Your Honor, but I think it's important. At page 70 of Artemis' initial brief, they actually make the submission and statement. The court ordered the commissioner to prove the NOLGA premise in phase 1. So when the court said, you've got to prove the NOLGA premise, yes, the commissioner did submit the verdict form. Now, let me ask you this. I need to go back to basics for a moment. The trial was to establish whether Artemis itself could be held liable, correct? That's correct. All of the other defendants either settled or defrauded. Or whether there was a conspiracy that harmed, caused damage. What went to the jury was a misrepresentation, a concealment claim, and a conspiracy. So had the commissioner prevailed against Artemis just on the individual fraud claims? Forget the conspiracy for a moment. Theoretically, the commissioner could have gone on for damages just against Artemis. For damages that arose from that fraud, correct. Yes, right, okay. So you add the conspiracy in, and that sort of broadens the scope of Artemis' potential liability. It does. Because he can be held liable for the acts of his co-conspirators. That's correct. Correct. So why was the NOLGA premise essential in that first phase of the trial? It wasn't, Your Honor. And it was NOLGA's position throughout these proceedings that it was not essential. But the court held otherwise. Okay, so then the first phase comes to an end. The judge submits these special verdict forms to the jury, and the jury returns verdict forms. What are in issue here, 1, 3, and 5, and they're unable to come to an agreement on 7. That's correct. Okay. Put aside 7 for just a moment. If you put aside 7, if you look at, if you just look at number 5, that would seem to provide a basis to allow the case to go forward to the damage trial, correct? It absolutely did. And, in fact, the district court determined that it did form the complete basis. Okay. Now, was verdict form number 5 in any way inconsistent with the jury's answers to verdict forms 1 and 3? No, it was not. Why not? And they could be construed perfectly consistently. Because the jury, in determining the answer to the last question on verdict form number 4, which was did Artemis' participation in the scheme cause harm to the Elika estate, they were able to consider the totality of the fraud and not just Artemis' individual participation. So 5 was bigger than 1 and 3. Exactly. All right. Now, the judge said, the district court judge said, well, we have this other verdict 7. And the jury wasn't able to answer that. And seemed to have factored that into the reconciliation of the verdict forms. Why was that improper? It was improper because what he did is he answered the verdict form. In order to reconcile the verdicts, the law is pretty clear. You ask, is there any way to view these consistently? And if there is, you preserve the verdicts you have. And usually you enter judgment. Part of the complication here is the bifurcation, in all candor, Your Honor. That's pretty common, though. It is. But there's not a lot of cases that involve that specific circumstances. In fact, all of the cases that I've reviewed at least seem to involve a full trial. So you don't have the situation of going from one phase to the next phase. The judge did the right thing there. The problem is, in his June 10th order, he then, either through a de facto JML, or by answering the jury's verdict, says, and now you don't get to consider the null the premise. I'm going to answer that as a no. And it's inexcusable. So I take what you're saying is that the failure to answer, to come to a verdict on Form 7, really is of no legal consequence. It was not of legal consequence. The trial should have proceeded to a full damages phase. And, in fact, during the jury instructions conversation in April, before the jury went out in Phase 1, the court very specifically recognized in objections to Verdict Form Number 7 from both Nolga and the Commissioner, that it wasn't an essential liability, a component of liability. Why would you be entitled to a full trial on damages if the jury is unable to come to a verdict on liability? Well, in some ways, this is all just sort of an interesting theoretical discussion, but it would have been very proper for the court to say, and under the case law of this jurisdiction, that when it's unclear what the jury had done, or that they were unable to answer it, you can resubmit it. So the proper answer would have been to go to Phase 2, allow a full presentation of evidence on damages, including the Nolga premise, much of which had not been presented. And did you ask the district judge to do that? We asked the district court to be allowed to do that, not just once, Your Honor, but on four different occasions that was requested. Nolga filed a motion asking the court to reconsider its June 10th order. The Commissioner filed pleadings with this court seeking its intervention. Jury instructions were submitted on the Nolga premise for Phase 2. And the Commissioner also submitted a comprehensive offer of proof on the Nolga premise, which made the same request. The district court in addressing the Nolga premise places a great deal of stock in the idea that what the jury could have found was that, but for Artemis's conspiracy, that the bid might have been awarded to either Nolga or Sierra, and that the Commissioner had cast his lot. As he said, he had ridden the horse that he would have given it to Nolga alone, and so the question of Sierra became irrelevant. Why was it important to the Commissioner to prove that the bid would have gone to Nolga and not to Sierra? Because that's what the district court ordered the Commissioner to do, is why it was important. It was not a component. It was not a proper standard to award damages in this case. And are you objecting to that on appeal? Yes, we have, Your Honor. We believe that there should be a remand, and that should not be a requirement of retrial. Well, go ahead. I'm sorry. Just one follow-up question. But that would upset the entire verdict then. Because it would just upset the damages portion, then you've got to have an entire retrial on the question of liability. The liability portion can stand. The liability is a complete verdict. And if you haven't asked the jury the relevant questions. The relevant questions. All components of liability are established and contained within Verdict No. 5. Your objection, you object to Verdict Form 7 on its own because that compels you to the Nolga premise. Right. And the premise I just placed to you, the proposal I just gave you was that what Verdict 7 probably maybe should have said was that the bid would have been awarded either to Nolga or to Sierra. Now, if you agree with me on that, then you've got to argue for a new trial on liability, not for retrial of damages. Perhaps I've misunderstood your question, Your Honor. I'm sure that's the case. Because the liability, the complete finding of liability exists. And even in the finding of liability, the commissioner was able to meet the higher standard and burden that the district court put on it. And in the verdicts that the jury did return, they actually found for the Nolga premise. In which verdict? 1 and 3. In Verdicts 1, 3, and in 5, they found harm. And the harm instructions requires a finding of the Nolga premise. Instruction No. 3 is the Reliance Instruction. And in order to find in Verdict Forms No. 1 and 3 that the commissioner relied on a misrepresentation or concealment, it had to cause him to select the Altus-Moth bid instead of the Nolga bid and submit the Altus-Moth bid to the Rehabilitation Court for approval. We must presume that the jury followed the instructions. But as I understood your brief, I think it was your brief, your argument here is that there was error and that this error was prejudicial and that you should get a retrial on the question of damages only. That's correct. That is, you should be able to establish the Nolga premise in a damage phase of a trial and the amount of those damages and to ask for punitive damages based on that. I think that that's a fair statement. Isn't that what you're asking for? Your Honor, we are asking for that, although I believe that... Your Honor, as I understand from Judge Bivey's question, you're not asking that we, that if you were to prevail on this, that the judgment be, the jury's verdict, the judgment of the court be vacated, remanded for an entire new trial from the get-go. That is not the case. We are not seeking an entire new trial. We are simply seeking a new damages trial. Right, the damages phase. Exactly, in which the proper standards are applied. Correct. That's what we're seeking. Your time is up. I'll give you some more time because there are a lot of issues here, and I'm sure we'll have a few number of questions for the other side. Did you have any questions before? Let me... Okay. Thank you. Thank you very much. Good morning, Your Honors. If it please the Court, James Clark for Appley and Cross Appellant Artemis S.A. As there were two advocates on the other side, there'll be two on our side, too. My colleague, Robert Weigel, will address the arguments on the cross appeal, which have not been subject to many of the Court's questions so far. And what I'm going to do is try to respond to some of the things the Court asked rather than in the ten minutes or so I've got. Let me start with a couple of things that I think are fundamental to the NOLGA premise. I wasn't going to start there, but I think I'm going to. And that is the verdict form 7 was, in fact, requested by the Commissioner. There's no question about that. The Commissioner wasn't compelled to only seek damages on the NOLGA premise. As a matter of fact, ultimately, there are two different damage theories considered by the District Court and by the jury upon which they found zero damages. One was a claim that but for the actions of the conspiracy, there would have been a $75 million savings and indemnity. The second was that had the Commissioner known about the conspiracy, he would have rescinded the entire transaction, gotten back bond profits, would have given the insurance company to somebody else, perhaps NOLGA. And that claim was about a billion and a half dollars. So it's certainly not true that Judge Matz ever required them to ride simply the NOLGA horse in the damage phase. But I think Judge Bivey's question is a key one here, and it's kind of causation 101. Can you proceed to prove the quantity of damages when you have failed your burden of persuasion, your burden of proof, on the liability phase to prove the fact of damages? Well, they proved liability. They got verdict 5. Well, I don't think that's right, Your Honor. What does verdict 5 say? Verdict 5 says that the conspiracy caused harm. No, they can get damages for the conspiracy causing harm. They could if there was actually any compensatory damages, any calculable damages resulting from that harm, but the jury held there weren't. The jury found explicitly there were zero damages. That was the jury finding. But that was in the second phase of the trial, and that's after the judge said you can't argue this NOLGA premise. I use that loosely. I understand what the court means. And the judge did say that because they had to. He took that away from them. Well, he took them away from them because they did. I don't understand. I was a district court judge for quite a long time. Oh, we're good, Your Honor. I live here in Los Angeles. Right. And I don't quite understand what – did he grant a JNOV? I mean, did he grant a judgment as a matter of law? He denied two judgments as a matter of law. So what happened – what's the legal premise for excluding these damages? The legal premise for excluding the damages – Which rule of federal procedure does this rest on? I'm not sure it rests on any specific rule of federal procedure, Your Honor. It rests, I think, it's essentially a California law claim. And the principle, I think, is pretty basic. Until you establish liability in a bifurcated case in any court, you can't go forward and prove the damages. But he did. But they did. But they didn't – I don't think – They did. They found liability in a conspiracy, but civil conspiracy requires actual compensable damages. But they don't get – but the first part of the trial wasn't for them to establish the amount of damage. No, but they had to establish the fact of damages. They did. No, they established harm. And here's what happened at court. What's the difference between harm and damage and injury? Well, the argument they made is there's some harm to the system of insurance regulation. What imbued this entire case – and I think I've got to say this here because it's been commented on for the years I've been involved, and I, along with Mr. Weigel, were the two lead trial lawyers in this case – is what difference did it actually make that the people who bought the insurance company – and that wasn't our client because our client wasn't even around at that time – or ultimately Artemis, which became owner of two-thirds of the holding company, the insurance company, had a relationship with the French government? What injury did that cause the commissioner when Judge Lewin held that the highest fair market value was received for the bonds and that nothing was done improperly in terms of the payment of the insurance company? The reason the jury didn't find any damages here is there wasn't any damage from this magnificent fraud that Mr. Russell talks about. And, in fact, the commissioner did before frequently grant permission for agencies of foreign governments – to an Idaho corporation as well as a corporation of France, it's any non-Californian insurer – and, as Judge Matz pointed out at trial, there was never any discussion what the policy was. So whatever harm there was from the conspiracy wasn't an economic harm. Well, let me – I still – I'm still trying to – I understand your frustration here because, you know, the commissioner did at the outset – if you go back to the very beginning, he made a determination not to go with NAWGA. And, you know, there's – the district court said he rode the horse in trying to bail off now at some point. But – I think so. You're right. You know, but if you look at the trial, the district court judge said, okay, we're going to have a bifurcated trial. Without objection, I might add. Right. I mean, it makes sense. I did that many times, bifurcate trials. I used to bifurcate liability, damages, impunities. And then Monell in a civil rights case – We'll get to that. I'd even go the fourth time. I'd go – we're going to have a Monell phase at the very end, you know, so like a four-part trial. So the first phase was to establish liability, that you had a right to go forward to the damage phase. And if you read the verdict forms, it sure looks to me, and as I think the district court agreed, that they had the right to go to the damage phase of the trial. And then what he does is he cuts out a big chunk of what they wanted to present as a basis for their damages. And I'm trying to figure out, did he grant – there was a non-answer to verdict number seven. There's no legal consequences. There's nothing. The jury couldn't come to an agreement. You don't place any legal significance on that. I do place legal significance on it. A couple things I have – But how can you? There's no – it's a non-verdict. The jury didn't – the jury was hung. As the commissioner's counsel told the jury in his closing argument explicitly, and this is in our brief, a yes answer on verdict form seven is an element of the commissioner's case. It is a necessary, required part. That's a direct quote. He told the jury – He can say whatever he wants, but there's still no answer. I think under the ethical law, Your Honor, he's bound by that. What case and what rule supports that statement you just made? I want – what backs that up? Because I've been looking high and low since I started reading the briefs in this case to figure out the legal basis for what the district court did. And I can't figure it out, to be honest with you. The legal basis was, from the beginning, he said you have to choose some damage theory. What was your definition of harm? He then asked on the jury instruction conference, let me ask the jury what the harm is because you've alleged different kinds of harm here. The commissioner's counsel and Nolga's counsel specifically said, no, don't do that because we don't know what the harm is going to be. He said you've got to decide what the harm is here because that's an element of your case. They picked Nolga. Now, for lots of reasons, and there was a lot of cross-examination evidence which is cited in the brief, the jury was not convinced that the Nolga premise was viable. The commissioner ever would have picked Nolga. So then it sounds like what the district court judge did was he assigned a no answer to number seven. No, he assigned a failure of proof to note seven and said you can't go forward in that theory because you didn't prove that theory of liability. That doesn't make any sense to me. Well, Your Honor, that's what he did, and it certainly made sense. That's for the reasons I brought this up. I can't fit that within. Maybe I'm looking too narrowly at the rules of federal procedure and how a bifurcated trial ought to proceed, but I can't. Counsel referred to it as a de facto judgment as a matter of law, but that can't be what it was. No, it can't, Your Honor, because we made that motion. It can't be what it was. So that can't be correct. So was it an emotion in limine kind of ruling that excluded all this damage evidence on the ground that it was irrelevant? That can't be what it was. Surely it was relevant. Well, I think it was again. So it's just sort of like floating out there, and I can't quite put a handle on it and sort of put it in a. . . It's pure and simple causation, just as Judge Vibey's question suggested. A failure to establish liability was their burden. A hung jury is equivalent to a no when you have a burden of establishing liability. And I've only got the two minutes left to let Mr. . . . Well, I'll give you plenty of time. Don't worry. This is important. No question, Your Honor. We think it's very important. But again, it's an instruction they asked for. And if it was erroneous for Judge Matz to do this, it's clearly. . . So did they invite this error? Absolutely, Your Honor. Is there an argument in the brief that it is invited error? It is invited error. It's clearly invited error. They proposed the instruction. Neither one objected. And contrary to what counsel says, the objections they made to Verdict Form 7 were not to its submission to the jury, but to the use of the, quote, but-for language. And at one point, the Commissioner's counsel, Judge Matz, said, well, I'll put probably in there. . . Probably caused the selection of the NOLCA bid. And the Commissioner's counsel said, okay. NOLCA's counsel continued to object. But then in Phase 2, they submitted the same instruction with the but-for language. And it's clear that the but-for is a requirement under California law. In fact, the applicable Casey instruction has a but-for standard. So for lost profits, that is the test. The fact they proposed it, the fact they said to the jury that you've got to find this, it seems to me is as clear. . . If it was erroneous, and we don't believe it was, Your Honor, but Judge Pez may, if you do, it was their error. And they can't now suddenly on appeal come up and say, oh, we proposed this, but too bad. Now we don't like it anymore. What they did was make it a tactical decision, Your Honor. They decided to go forward on their two other theories. By the way, the proper way to deal with this under the Washington v. Arizona case in the Supreme Court in the United States is to move for a mistrial. And not only did they not move for a mistrial, they actively didn't want a mistrial. And as is cited in our briefs, what they said were two things. First, we want to go forward on our other damage theories. And two, this is critical. But they could do that. Of course they can do that. But critically, they didn't want a mistrial because, as Mr. Fontana said, the lead lawyer for the plaintiff, we want to have Judge Matz decide our equitable claims on this record. Of course, that's what Judge Matz did. And that's the basis for the restitution order. So they made a tactical decision. The Scogin case from the Eighth Circuit, the Winter case from the Fifth Circuit, both say when you do that, you can't again complain on appeal. That might be a, I recognize that, whether they sort of like waived their right to. I think by not moving for mistrial, they clearly waived their right to do something here. In fact, what they told the judge below is if he granted a mistrial, they wanted him to stay that order. Did you urge the court to go forward with the damages phase? We did not move for a mistrial. We made a decision not to move for a mistrial. So you wanted to go forward with that. Yes, we did. We did. Let me just move to punitive. Go ahead. I'm going to take a minute. I think the court is all over this. The key California Supreme Court cases, which are absent from their initial brief and dealt with in passing in their second brief, all require, as a quote, absolute predicate, a finding of compensatory damages. The Gagnon case that Mr. Russell cited was, in fact, a case, and it's a middle-level district court of appeal case, where there was no opportunity to find actual damages. The other cases basically don't involve, as Judge Pius suggested, a finding by the jury that there was zero damages. Or in this case, it's very interesting, unlike the Ward v. Taggart case, the trier of fact on the non-damage, the non-legal theory, the restitutionary theory, if you will, decided there should be punitive damages. Here, Judge Matt said, he made the restitution award, although we think it's defective, he decided there should not be punitive damages. Final point, Your Honors. Just let me back up on that. So what do you understand the state of California law to be with respect to a ward of punitive damages where the jury doesn't return? I think that absent a ward of substantial compensable damages, there cannot be a ward of punitive damages. No, he used the word substantial. So your claim is then that nominal damages would not support this under California law? I don't. Nominal damages might support. I know you made a BMW v. Gore argument. Yes, we haven't gotten to that, and that wasn't really addressed by opposing counsel. We think, if they'd gotten a dollar. That even nominal damages won't support punitives? No, I'm not saying that. I'm saying some damage, although some of the cases say substantial, so some of the cases indicate that some substantial award would be necessary. They're not all consistent there. Obviously, a $1 award here would not have supported a $700 million punitive damage award under all the tests at 4th and State Farm and Gore. But the other thing is, after the jury came back with zero, counsel for the commissioner was asked, well, do you want me to send them back by Judge Matt's and see if they'll award nominal damages? Because counsel took the position they should have at least awarded nominal damages, although I argued in my closing for zero. Counsel said, no, we don't want them to go back. Let it sit. They again made a tactical decision. A lot of this case is about tactical decisions made at trial that now they're asking to do over on appeal. I simply don't think that that's a proper function of the appellate system. I don't think it should be countenanced here, when the error, if there was any, was invited and the decisions that were made at trial were tactical. Okay. Thank you, counsel. Thank you. May it please the Court. Robert Weigel for Artemis. I was wondering if Your Honor might mind if I took a stab at answering the question you asked Mr. Clark for. Which is that? The one about where in the federal rules and what was the. . . Yeah, what did the district court do here? Did he grant a judgment as a matter of law? Did he grant. . . He did not, Your Honor. Did he grant a. . . He presented with a difficult situation. The jury, and I think he had a right to ask the Nulga question, could have asked it in the first phase, could have asked it in the second phase. There was no particular reason why it had to be in one phase or the other. But the parties all agreed it would be tried in the first phase and that was for the court's convenience and whatever. The jury came back conclusively and said, we can't answer this question. That's of no legal significance. They said they were given an Allen charge. They could not still answer that question. What Nulga was proposing was to say, you should go back and present that same question a third time to the same jury. And that would be impermissible compulsion. The commissioner had an option at that point. The jury couldn't reach an answer to that question. He could have either asked for a mistrial or come up with another damage theory. So the way to look at it then is they waived their right to complain. Absolutely, Your Honor. It's a waiver problem. Absolutely. They could have asked for a mistrial at that point and it probably would have been granted. But they chose not to. They came up with another damage theory. They wanted to try the other damage theory. They wanted to try restitution. They can't now, after they tried and lost. Is there some place in the record where it shows that the district court, where they said, we want to go forward? Is there an exchange with the district court where they say, we want to go forward with the damage phase, even though you're excluding the Nulga premise? Absolutely, Your Honor. And as a footnote to our brief, perhaps Mr. Clark can help me out here. In the supplemental record at 69192, Mr. Fontana, I would simply ask that any order granting a new trial or declaring a mistrial here be stayed for enough time to allow us to take an application to the Ninth Circuit. In addition, the commissioner would object to any grant of a mistrial now, and this is at the excerpts of the record 163, I believe, or 1197. There's two sites here. In addition, the commissioner would object to any grant of a mistrial now because that would deprive him of the right to have his equitable claims decided on the current record. So he made a tactical decision to go forward to try the equitable claims based on the evidence that was presented. You know, equitable claims are generally just tried to the court. Absolutely, Your Honor. So he could have. I mean, that could have been construed as just trying the equitable claims to the court. But he wanted to go forward. And no jury is going to arrive. Juries aren't allowed to award. You can ask for a recommendation, but you can't. We're actually slipping into my points. I want to make another point. But he made a conscious choice. They had the option to ask for a mistrial. We argued that the findings that the jury came up with resulted in a finding of no damage because they didn't have a completed conspiracy finding because they couldn't prove the harm that they set out to prove. The judge disagreed with us. They didn't ask for a mistrial. The judge said they and we went forward on the $75 million and then the judge allowed them to present another damage theory of about a billion and a half dollars. I'd like to address three points on the cross appeal. First, the rehabilitation court's order back in 1993, the one that Mr. Gabriel spoke about before, approved the plan. And under the Metalwood case and the International Electronics case, it conclusively conveyed property rights in the profits of Aurora. It allocated the property rights and it is conclusive. And this suit, from the very get-go, is an impermissible collateral attack on the court's decision under the Metalwood case and under the International Electronics case of this court. Second, even if the suit was allowed, restitution in this case was improper under this court's decision in Paracourt because there is a binding contract that governs the party's rights, namely the rehabilitation plan, that specifically gave the plaintiffs, gave the policyholders a 20% profit participation for five years. Judge Matz altered that and made it 50% for the life of the rehabilitation and that was not proper. Finally, even if you were to allow a restitution award here, we're entitled to an offset under Section 877 for the almost $600 million that was paid in settlement by the parties that were alleged at the time of the settlement to be our co-conspirators, our co-defendants. They were alleged to be liable for the same lost profits that we were alleged and ultimately we tried. And under 877, we're entitled to an offset for that $600 million. The cases are really clear that the rehabilitation court had in-rem jurisdiction over all of the assets of executive life. The California Court of Appeals said that. This court in an ancillary case related to Morgan Stanley deferred in this very action and deferred to the notion that the California court had in-rem jurisdiction of all of the assets. The rehabilitation plan was fully litigated. Counsel, if your argument is correct, then why did your co-conspirators settle? Wouldn't that be an answer to their liability as well? Absolutely. Absolutely. And this argument was made to the district court and lost. I don't know what motivated my co-conspirators and I wouldn't concede that they were co-conspirators, Your Honor, but for purposes of your question. I will note that they had pled guilty to several felonies and had no witnesses who could appear at trial in the United States because the witnesses that they were proposing were all under indictment. So that may have said something to do with their decision. If your argument is right, this was foolishness on the part of the co-conspirators to have paid $600 million. If my argument is right, the commissioner made himself a very good deal. Yes. And my argument is right because under the Pacific Mutual case, the California Supreme Court said so. The rehabilitation plan conclusively determined the party's rights to these assets and it has this profit sharing provision in it. And there's no basis to upset it. There was no allegation. The Rehabilitation Court in 1993 was not aware of the allegations of conspiracy. They weren't aware of any fraud or misrepresentation by Artemis. Well, it was extensively litigated, Your Honor, and actually somewhere in the record there's a quote from Mr. Fontana. In 1993, was the Rehabilitation Court aware of Artemis' fraud at that time? First off, there are two different questions. The jury did find that there was not a completed fraud and therefore to say Artemis' fraud is not. Artemis' misrepresentations as part of the co-conspiracy or whatever. There was an assertion before Judge Lewin by Mr. Fontana, who was representing other parties at the time, that he knew to a moral certainty that there was some agreement between Altus and Ma. But the portage contracts and all of this, none of this was in evidence before the Rehabilitation Court? Judge Lewin said that didn't matter to him and this was resolved. And this brings up the very issue of the difference between extrinsic fraud, which can upset a settled judgment, and intrinsic fraud, which cannot. And the Eichmann case in the California Court of Appeals makes that very plain. Extrinsic fraud is I keep you from getting to the courthouse. I tell you the wrong day for the hearing. I put the subpoena or the summons in the sewer instead of delivering it. That's extrinsic fraud and that can upset a settled judgment. But intrinsic fraud, fraud that goes to the merits, is not enough to upset res judicata. And what the cases say simply is at some point in time enough is enough. You have a right. Usually it will come out if it goes to the merits, but if it doesn't, that's just the price that society pays for the fact that we need conclusiveness. This decision was, this plan was litigated extensively, many days of hearings. Judge Lewin said he wasn't interested in the contracts between Credit Lien A and the Moth Group. And there was no extrinsic fraud alleged. In fact, the commissioner has never really sought to undo the rehabilitation plan. The rehabilitation plan gave $6.9 billion to policyholders. He hasn't come in and said I want to upset that judgment. That judgment is conclusive as to everyone's rights. And under the Metalwood case, Judge Posner's decision, and the International Electronics case in this court, in both instances there was alleged to be collusion among the bidders. There was a fraud allegation in the Metalwoods case. In this case, in the International Electronics case in this court, it was alleged that there was an antitrust conspiracy. And in each case the court said this is an improper collateral attack on the judgment and you can't proceed. Trying to get substantial damages from the successful bidder is the same thing as attacking the judgment. I'd like to move on to the argument that restitution is improper because Paracore is a very simple rule. It is applied in California. It is applied all over. The district court acknowledged that the commissioner did not prove the elements of fraud against Artemis. He acknowledged and ruled that there was no injury to policyholders. He ruled that we had fulfilled our obligations under the rehabilitation plan and that we had operated the insurance company in a businesslike and a lawful manner. But nevertheless, he held that they were entitled to $250 million in restitution because the court held that we engaged in something shady, whatever that might mean. Well, he relied on an unjust enrichment theory. It was clearly an unjust enrichment theory. He said right at the very beginning of this, confining the fact and conclusions of law. And unjust enrichment is the same thing as restitution under California law. And under the Paracore case of this court, Wellnoon and Lance Camper, when there is a binding contract, because unjust enrichment or restitution is a quasi-contract. It's a contract implied at law that the court decides what is just. And when there is a binding contract in place, in this case a binding contract that's been approved by a court, that the commissioner does not in any way seek to upset. He wants that plan to stay in place. When there is a binding contract in place, you can't then overlay that with an implied contract, a quasi-contract, because what you're doing there is you're upsetting the settled rights. You could come in and say, I want rescission. I want to undo that contract and get restitution. But they didn't do that. They didn't want to do it, and they didn't have a basis for doing it because they couldn't prove that we engaged in any fraud. You should begin to wrap up. Thank you, Your Honor. My final point, well, two points. One is that restitution is also improper here because it was an adequate remedy at law. That's the law in California, the Ramona Manor case. And finally, we're entitled to an offset under 877. It's a very plain statute. The legislature said that if two parties are alleged to be liable for the same tort as we were and as Credit Lyonnais was and as Aurora and New California were, if at the time of the settlement they're alleged to be liable for the same tort, if there's a single indivisible injury, in this case, the profits that they claim they would have made if they had done a different deal, the lost profits they would have earned on the insurance operations and the lost profits they would have earned on the junk bonds, there was a single indivisible loss. They got $600 million. The jury found that they had no injury. I thought that the way the district court calculated this looked exclusively at how Artemis had benefited from this and not looking to the benefits to the parties as a whole. You're absolutely right, but what he did was he looked for the same. The benefit to us was the lost profits, the profits that the insurance operation made. And he was seeking, the commissioner was seeking those lost profits both from us and from Credit Lyonnais and from Aurora and from New California. First, in law, conspiracy allegations, the fraud allegations, and second, in restitution. And to allow him to flip-flop between restitution and law, all that is required under the statute is that they get peace if they settle. Credit Lyonnais gets peace. We lose our right to get any sort of indemnity or contribution from them. They get a bar order. They get peace. But we, we, Artemis, are deprived of our right to go after them for whatever fault they're responsible for. In turn, the legislature decided that we get an offset for the amount of money that they paid in the release. And that's the way the legislature did it. And the statute says claims. It doesn't specify between equitable claims and legal claims. The idea of offsetting is to prevent a double recovery. Exactly, Your Honor. If the district court has focused on precisely what Artemis benefited from here, how is that, how does that go to the question of double recovery? Well, what our benefit. Presumably monies that Credit Lyonnais has paid in here in settlement are for whatever Credit Lyonnais thought was its own fault. Well, it was, there's no question that we were alleged to be co-conspirators. And the money that they, that the restitution award, which isn't based on Artemis' gain, but Artemis' gain was measured by the lost profits that, or by the profits that Aurora made. The commissioner was already seeking those profits. And if the commissioner had been successful at the trial in front of the jury, if he had proved that he would have recovered those $250 million, that he was out $250 million in lost profits on the insurance company, there's no question that we would come in here and say there was $600 million that was paid in settlement, and that offsets the $250 million in lost profits and damage, and he's whole. And under Vesey, he's complete. The fact that he lost in front of the jury and recovered those same lost profits in equity should not put him in a better position. I think a straightforward application of the statute compels that we get an offset here. Okay. Thank you. I've given you plenty of time. Okay. We have some rebuttal. Not to exceed what I let him have. I'll try to keep this brief. If the court will indulge me, I'd like to make a few points about the punitive damages and then quickly respond to the cross-appeal. I want to be very clear about this idea that Verdict Form 7 went to liability. It clearly did not. The only requisite elements of liability for the conspiracy claim were set forth in the conspiracy instruction itself and on the verdict form for the conspiracy claim. Judge Max himself, at page 1056 of the excerpts of records, specifically disavowed that Verdict Form 7 went to liability. And the only harm element set forth in the instruction on conspiracy was that the conspirators obtained ELIC junks, bonds, and insurance business through fraud. Artemis, that was clearly proven. They don't contest the sufficiency of the evidence to show that that was proven. They now argue that there's an additional element to a conspiracy claim, that is, compensable harm or compensatory damages. They didn't make that claim to the district court. They didn't ask that that element be included in this instruction. They haven't asked this court to correct that instruction here, in part because it would only entitle them to a retrial and not the complete denial of any remedy, which is what they're seeking here. Moreover, with respect to whether... Let's just, for the moment, set aside the NOLGA premise. Suppose that this was a case in which there was, in fact, no compensable harm, but the fraud was completed. There was a completed fraud. There was harm, but it didn't give rise to compensatory damages. But it was enormously profitable for the defendant. Under California law, so long as there is a sufficient finding of harm to establish liability, there's an absolute entitlement to nominal damages and there's an undeniable predicate for punitive damages under the state Supreme Court's decision in Kaiser based on the nominal damages award, in addition to the sufficiently adequate predicate of the restitution award in this case. With respect to whether or not a nominal damages award would be a constitutional predicate for an award of $700 million of damages, one thing that's important to keep in mind is that Artemis isn't contesting the amount of the award in this case. They didn't move for remitted or in the district court. They haven't asked for remitted or here. The only claim before this court is the legal claim that the only constitutional award of punitive damages in this case is zero, not a single dollar. And so with respect to the question of whether a nominal damage award can, as a matter of constitutional law, support the award in this case, the answer is yes, because the state has, even a $700 million award, the state has a legitimate interest in ensuring that frauds committed against the government that go to the heart of the commissioner's ability to do his job to regulate the insurance industry should at the very least be made unprofitable. With respect to the cross appeal, let me start with the res judicata point. There are several reasons why the res judicata effect of the conservation court don't bar the restitution order in this case. First, to be clear, ordinary principles of res judicata wouldn't apply because Artemis wasn't a party to those proceedings. Its co-conspirators weren't adverse parties to the proceedings. And, of course, Artemis' own conduct, which is the basis of the restitution award, wasn't at issue and couldn't have been issue in that case because they weren't created until after the initial plan was approved and even after the bonds were transferred. The only response that they have is, well, this is an interim proceeding, and so therefore it binds the world. But an interim proceeding binds the world only with respect to the very specific question of title to the realm. It doesn't bar in personam liability, and it certainly doesn't bar in personam liability for conduct that took place outside of the conservation proceedings after most of them have been completed, which in this case was Artemis' lies during the regulatory process to obtain a license to run an insurance business. And that had nothing to do with the prior conservation proceedings. In addition, the fraud in this case committed by its co-conspirators was absolutely extrinsic. The lies that were told to the commissioner by the co-conspirators during the regulatory approval process not only prevented the commissioner from coming to court and adequately opposing their bid, but in fact were successful in turning him from an adversary into an advocate. And that's precisely the kind of situation that the California courts would not permit that kind of judgment to stand. And if there's any question, a serious question about that, I think that this would be the sort of question that would be appropriate to certify to the California Supreme Court. In any event, with respect to contract rescission, even if the rule applied in this case, there's a well-established exception for cases in which rescission is impracticable and the district court can take care of the defendant's rights in crafting the order, and that's precisely what happened here. It was impractical to undo all the transactions in the conservation proceedings. And the district court protected Artemis by having a restitution order that only had a part of its profits removed. And with respect to the offset, it only applies to torts. It only applies to joint-tort fees. And here we had a restitution award. And that matters because, as evidenced in this case, the restitution power of the court allows the court to take into account things like the amount that was paid by the co-conspirators and the fact that it focuses on the defendant's particular conduct in this case. And so, Judge Biby, you're absolutely right. If the award of restitution had been the $2 or $3 billion that was the damages, the unjust enrichment for the entire conspiracy, they might have some kind of complaint about double-counting. But here, the district court was able to deal with that problem by having a defendant-specific restitution order. We'd like to save a little time for your co-counsel. I think now is the time. What do you have to say about waiver? You know, that's exactly where I was going to go. I think this mistrial concept in that the commissioner and NOLGO waived their right to be here before you now because they didn't seek a mistrial is really a red herring. In the June 10 order that the court issued, it indicated at page 8 that there would be no retrial. It said, we're going to go to phase 2. The court considered the issue. It tried to figure out what to do with the verdicts. It determined that they were consistent and that there was a finding of liability. And under that circumstance, there is nothing to do but go to the second phase of the trial. And what did the commissioner and NOLGO do? Did you say, ah, just an abundance of caution, Your Honor? We move for a mistrial. But there was a complete finding of liability. That would import the verdict form number 7 that did not exist. It might have been really helpful if you'd gotten an answer to the verdict number 7, though. There was an answer to the NOLGO premise, and that is found within the reliance instructions and the misrepresentation. That's been a subject of enormous dispute, but it would have been settled absolutely if you'd gotten an answer to number 7. It would have been. But the fact that the jury didn't answer it doesn't mean that the court can turn it into a no. And this whole notion that it would have been inappropriate to resubmit the issue to the jury in phase 2 is just simply not true. First of all, counsel recognized that the NOLGO premise could have been decided in phase 1 or phase 2 and specifically stated here today that it did not matter. Had this matter proceeded to phase 2 and the NOLGO premise be permitted to be continued with, there was tremendous amount of evidence that was still to be presented. The district court had not allowed the commissioner or NOLGO to present any evidence as to the economic benefit that the NOLGO bid would have presented. Were these the same juries? Same jury. Same exact jury. Just phase 1 and phase 2, right? Exactly. And also, this circuit has concluded in cases like, I'm not sure I'm going to say it right, but Medeco, and we cite these in our briefs, that when you have an inconsistent verdict, so not just the failure to answer, but patently inconsistent verdicts, if you still have the jury in place, you can resubmit those verdict forms to the jury and try to get them to resolve that inconsistency. So the notion that it would have been improper to proceed with the NOLGO premise in the second phase is quite simply not borne out by the facts or the law of this circuit. I also think it's significant that on at least four different occasions, NOLGO and the commissioner tried to cure the defect. This is not a situation in which we sat idly by and did nothing. All right. Anything? No. Okay. Thank you. Thank you very much. Thank you. We appreciate your arguments in this interesting case, and I realize it's been a difficult case for everybody. It seems to be going on forever. No end in sight, huh? It just keeps going. Next phase, right? All right. Thank you all very much. The matter will be submitted, and we're through for the day. Thank you. All rise. This court for this session is adjourned.
judges: Nelson, Paez, Bybee